# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

JOHN ALLEN LANOUE,

 Petitioner,

vs.

JACK PALMER, *et al.*,

 Respondents.

3:06-cv-00205-LRH-VPC

ORDER

  This habeas matter under 28 U.S.C. § 2254 comes before the Court for decision on the merits. Petitioner John Allen Lanoue alleges that he was denied effective assistance of counsel with regard to the sentencing in connection with his 2004 Nevada state conviction, pursuant to a guilty plea, of attempted sexual assault with a minor under the age of fourteen and attempted lewdness with a minor under the age of fourteen.

## *Governing Law*

  The Antiterrorism and Effective Death Penalty Act (AEDPA) imposes a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 117 S.Ct. 2059, 2066 n.7(1997). Under this deferential standard of review, a federal court may not grant habeas relief merely on the basis that a state court decision was incorrect or erroneous. *E.g., Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Instead, under 28 U.S.C. § 2254(d), the federal court may grant habeas relief only if the decision: (1) was either contrary to or involved an unreasonable application of clearly established law as determined by the United States Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. *E.g.*, *Mitchell v. Esparza*, 540 U.S. 12, 15, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003).

A state court decision is "contrary to" law clearly established by the Supreme Court only if it applies a rule that contradicts the governing law set forth in Supreme Court case law or if the decision confronts a set of facts that are materially indistinguishable from a Supreme Court decision and nevertheless arrives at a different result. *E.g., Mitchell,* 540 U.S. at 15-16, 124 S.Ct. at 10. A state court decision is not contrary to established federal law merely because it does not cite the Supreme Court's opinions. *Id.* Indeed, the Supreme Court has held that a state court need not even be aware of its precedents, so long as neither the reasoning nor the result of its decision contradicts them. *Id.* Moreover, "[a] federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous." *Mitchell*, 540 U.S. at 16, 124 S.Ct. at 11. For, at bottom, a decision that does not conflict with the reasoning or holdings of Supreme Court precedent is not contrary to clearly established federal law.

A state court decision constitutes an "unreasonable application" of clearly established federal law only if it is demonstrated that the court's application of Supreme Court precedent to the facts of the case was not only incorrect but "objectively unreasonable." *E.g., Mitchell*, 540 U.S. at 18, 124 S.Ct. at 12; *Davis v. Woodford*, 333 F.3d 982, 990 (9th Cir. 2003).

To the extent that the state court's factual findings are challenged intrinsically based upon evidence in the state court record, the "unreasonable determination of fact" clause of Section 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir. 2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, the AEDPA requires substantially more deference:

> . . . . [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004); *see also Lambert*, 393 F.3d at 972.

////

-2-

If the state court factual findings withstand intrinsic review under this deferential standard, they then are clothed in a presumption of correctness under 28 U.S.C. § 2254(e)(1); and they may be overturned based on new evidence offered for the first time in federal court, if other procedural prerequisites are met, only on clear and convincing proof. 393 F.3d at 972.

On a claim of ineffective assistance of counsel, the petitioner must satisfy the two-pronged test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must demonstrate that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's defective performance caused actual prejudice. On the performance prong, the issue is not what counsel might have done differently but rather is whether counsel's decisions were reasonable from his perspective at the time. The reviewing court starts from a strong presumption that counsel's conduct fell within the wide range of reasonable conduct. On the prejudice prong, the petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *E.g., Beardslee v. Woodford*, 327 F.3d 799, 807-08 (9th Cir. 2003).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Davis*, 333 F.3d at 991.

*Ground 1: Effective Assistance – Specific Performance of Guilty Plea Agreement*

In Ground 1, petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to object and/or seek specific performance of the plea agreement when he was sentenced without a psychosexual evaluation having first been performed.

Lanoue was charged on March 1, 2004, with three counts of sexual assault with a minor under fourteen and five counts of lewdness with a child under fourteen. Lanoue waived the holding of a preliminary hearing because he entered into a plea deal with the State. The investigative materials reflect that the charged offenses arose from Lanoue's alleged sexual abuse of his seven-year old step-daughter. According to the materials, the evidence available to the State if the matter went to trial included Lanoue's admission, ultimately, to investigators in a taped interview that, on numerous occasions, he rubbed his genitals on the child's genitals and buttocks and also engaged in oral contact with her genitals. #24, Exhs. 1 & 2; see also #24, Ex. 6, at 12-13 (admission at plea).

Lanoue entered into a conditional plea agreement with the State pursuant to which he would be allowed to withdraw the plea if the Court did not follow the parties' recommendation as to sentencing. #24, Ex. 6, at 3-4. Under the plea agreement, Lanoue pled guilty to one count of attempted sexual assault with a minor under fourteen and one count of attempted lewdness with a minor under fourteen. The written plea agreement stated the basis for Lanoue's plea as follows:

> My decision to plead guilty is based upon the plea agreement in this case which is as follows:
>
> The State has agreed to retain the full right to argue at the time of sentencing. Both parties agree to recommend a sentence of Three and one half (3 1/2) years to Twenty (20) years in the Nevada Department of Corrections on each count. It is further agreed that both parties will recommend each count run consecutive to the other for a combined sentence of Seven (7) to Forty (40) years in the Nevada Department of Corrections.

#24, Ex. 7, at 1.

The written plea agreement informed Lanoue that he was not eligible for probation for the offense of attempted sexual assault with a minor under fourteen. As to the remaining count, the plea agreement stated :

> I understand that pursuant to NRS 176.139 and my plea of guilty to a sexual offense for which the suspension of sentence or granting of probation is permitted, the Division of Parole and Probation shall arrange for a psychosexual evaluation as part of the division's presentence investigative report to the Court.
>
> I understand that I am not eligible for probation unless that psychosexual evaluation certifies that I do not represent a high risk to reoffend. I understand that, except as otherwise provided by statute, the question of whether I receive probation is in the discretion of the sentencing judge.

#24, Ex. 7, at 2-3.

The Division did not arrange for a psychosexual evaluation before the sentencing. Lanoue attached a copy of the presentence report with his later state petition. In the section of the report for "Defendant Information," under the category "Mental Health," the report stated: "In that one of the counts to which the defendant pled guilty is non-probationable, a psychosexual evaluation will be completed by NDOC prior to his release on parole." The presentence report further related, regarding "Victim Information," that, according to the mother, the child victim was "having a very hard time

dealing with what happened to her, and states quite often, 'I hate myself;'" that medication had been prescribed, "which does not seem to help;" and that the child was "very screwed up" since the offense. The report additionally reflected, in the section for "Defendant's Statement" that Lanoue "feels that he does not deserve probation." #24-7, Ex. 26, Appendix 4, at 2 & 4.

At the sentencing, counsel for the State and for Lanoue, consistent with the plea agreement, recommended two consecutive sentences of 42 to 240 months, for a combined seven-year minimum sentence before eligibility for parole consideration. When Lanoue addressed the court individually, he stated that he was willing to accept the consequences for his mistakes; but he asked the court to consider running the sentences concurrently rather than consecutively. #24, Ex. 8, at 4.

The state district court stated that the court was "inclined to go along with what the attorneys have negotiated." The court stated to Lanoue: "You probably don't want to put it in my hands." The court continued that "I will tell you right now, I'm not inclined to go any less, but I am inclined to go along with what's been negotiated." The court sentenced Lanoue to the recommended two consecutive 42 to 240 month sentences. #24, Ex. 8, at 4-6.

On the state post-conviction appeal, after stating the *Strickland* standard, the Supreme Court of Nevada rejected the corresponding claim presented to that court on the following grounds:

> . . . [A]ppellant claimed that his counsel was ineffective for failing to ensure that a psychosexual evaluation was prepared prior to sentencing and included in his pre-sentence investigation report (PSI). Appellant argued that because a psychosexual evaluation was not included in the PSI, he was unable to seek probation or a concurrent sentence for the attempted lewdness charge.
>
> Although the record on appeal reveals that the written plea agreement informed appellant that a psychosexual evaluation would be conducted prior to sentencing and included in the PSI, appellant failed to demonstrate that he was prejudiced by the failure to include a psychosexual evaluation in his PSI.
>
> Appellant initially faced charges for three counts of sexual assault of a minor under the age of fourteen years and five counts of lewdness with a minor under the age of fourteen years. In exchange for pleading guilty to one count each of attempted sexual assault of a minor under the age of fourteen years and attempted lewdness with a minor under the age of fourteen years, both appellant and the State agreed to recommend two consecutive sentences of three and a half to twenty years. Although the plea agreement informed appellant that the district court retained discretion to sentence him within statutory limits, at the sentencing hearing, the district court informed appellant that it was

> inclined to impose the agreed upon sentence but would not impose a lesser sentence. Further, appellant failed to demonstrate that if a psychosexual evaluation had been conducted the results would have been positive. Appellant received the sentence he bargained for, and cannot demonstrate that he was prejudiced by the failure to conduct a psychosexual evaluation prior to sentencing. Accordingly, we conclude that the district court did not err in denying this claim.

#24, Ex. 60, at 3-4 (citation footnotes omitted).

The state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*. A determination that petitioner failed to present the requisite prejudice was not an unreasonable application of *Strickland*. Specific performance is available to enforce a promise or agreement that can be said to be a part of the inducement or consideration for the plea bargain. *See Stubbs v. State*, 114 Nev. 1412, 1414, 972 P.2d 843, 845 (Nev. 1998). Arguably, the inducement for the plea bargain in Lanoue's case was the agreement by both the defense and the State to recommend two consecutive sentences of three-and-a-half to twenty years each on two reduced charges from the original eight charges. The prospect, such as it was, of probation – in a case where both parties were recommending consecutive sentences with a combined minimum term of seven years – arguably neither appeared to constitute a material inducement for the plea bargain nor was it stated to be the basis for the plea in the written plea agreement. Given the inducement for the plea as stated therein, a conclusion that there was not a reasonable probability that an objection or effort to secure specific performance vis-à-vis a psychosexual evaluation would have resulted in a different outcome at sentencing was not an objectively unreasonable application of *Strickland*.

Ground 1 therefore does not provide a basis for federal habeas relief.

***Ground 3: Effective Assistance – Sentencing on Sexual Offenses in View of Other Prisoners***

In Ground 3,[1] petitioner alleges that he was denied effective assistance of counsel when trial counsel failed to object to and assented to the state district court sentencing petitioner on the sexual offenses in the presence of other prisoners, allegedly resulting in petitioner and his counsel being inhibited from presenting mitigating information and evidence to the court during sentencing.

////

---

[1] The Court discusses the parallel claims in Grounds 2 and 4 regarding consultation as to appeal rights, *infra*.

-6-

At the beginning of the sentencing hearing, the state district court asked Lanoue whether there was any reason why judgment should not be pronounced at that time. Lanoue responded: "At this point in time, I feel that my safety is in – basically in question here being that the result of the charges, so I would ask that we do this in a closed session, if possible." Following a bench conference, defense counsel stated on the record that "we're ready to go forward." The court then again asked Lanoue whether there was any reason why judgment should not be pronounced at that time. Lanoue responded: "No, ma'am." #24, Ex. 8, at 3-4.

Thereafter, it appears that the participants sought to conduct the sentencing without reflecting that petitioner was charged with sexual offenses. The State submitted the matter on the negotiation, and defense counsel affirmed that the negotiation was for a seven-year minimum. Lanoue was given an opportunity to address the court. Lanoue stated that he had made a "stupid mistake" that he was "willing to pay the consequences for" and that he had let down and hurt "a lot of people." He asked for "a chance to prove myself to society, to prove myself to my parents, and other people as well." And he asked to court to consider imposing the sentences concurrently. He stated that "[i]f not, I understand" and that "I'm willing to accept any consequences and the help that I'm going to need." #24, Ex. 8, at 5.[2]

As noted in the discussion of the prior ground, the state district court sentenced Lanoue to the recommended two consecutive 42 to 240 month sentences. #24, Ex. 8, at 4-6.

On the state post-conviction appeal, the Supreme Court of Nevada rejected the corresponding claim presented to that court on the following grounds:

> . . . [A]ppellant claimed that his counsel was ineffective for failing to object to the district court's denial of his request to have a closed sentencing hearing. Appellant argued that a closed hearing was necessary because of the potential negative impact on him in prison if other inmates learned the nature of his offenses. Appellant asserted that the presence of other inmates in the courtroom during his sentencing hearing curbed his ability to offer argument in favor of concurrent sentences and probation, and made him fear for his safety and life. Appellant failed to demonstrate that his counsel was deficient in this regard.

---

[2] Lanoue's request for concurrent sentencing was at odds with the written plea agreement, under which *both* the State and the defense agreed to recommend consecutive sentencing.

> If a reasonable alternative to closing a public trial proceeding can be implemented, the district court should not close the proceeding. The record reveals that at the beginning of his sentencing hearing appellant requested to have the hearing closed. In response, the district court held a bench conference at which time it denied appellant's request, but stated that, in light of appellant's concerns, it would refrain from reading or referring to the charges against appellant at the hearing. No mention of appellant's charges was made at the hearing, and appellant failed to demonstrate that he could not adequately express his remorse or argue for a more lenient sentence without referring to his charges. Because the district court implemented a reasonable alternative to closing the sentencing hearing, appellant failed to demonstrate that an objection to the denial of the request to close the hearing would have been successful. Accordingly, we conclude the district court did not err in denying this claim.

#24, Ex. 60, at 4-5 (citation footnote omitted).

The state supreme court's rejection of this claim was neither contrary to nor an unreasonable application of *Strickland*. The Court notes that after the state court implemented the alternative procedure, Lanoue himself personally assented on the record to the proceeding then going forward. Lanoue cannot personally accede to the matter going forward and then argue later on post-conviction review that his counsel should have done something differently. Moreover, neither defense counsel nor Lanoue were free under the plea agreement to argue for concurrent sentencing, probation, or any sentence less than the sentence that he received. Petitioner urges that the plea agreement provided only that the parties would recommend the sentence to be imposed and that the sentencing court was not precluded by the parties' agreement from imposing a lesser sentence. Be that as it may, an agreement in a written plea agreement by the defense to recommend a particular sentence does not leave the defense – whether counsel or the defendant himself – free to recommend a stipulated sentence out of one side of its mouth while arguing for a more lenient sentence out of the other. Moreover, under Nevada state law, a defendant does not have a right to call witnesses to testify on his behalf at a sentencing hearing unless convicted of first-degree murder.[3] It thus would appear that petitioner cannot establish a reasonable probability that the outcome of the sentencing proceeding would have been different if defense counsel had handled the issue of the presence of the other prisoners differently. *See also Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir.2006)(given that the United States Supreme Court

---

[3] See #24, Ex. 60, at 5-6.

-8-

has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases, there is no clearly established federal law as determined by the Supreme Court in this context). The state supreme court's rejection of this claim accordingly was neither contrary to nor an objectively unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Ground 3 therefore does not provide a basis for federal habeas relief.[4]

*Grounds 2 & 4: Effective Assistance – Consultation Regarding Appeal*

In Ground 2, petitioner alleges that he was denied his right to an appeal with effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when counsel "failed to consult with him about an appeal as to the claim that the State had breached the terms of the plea agreement by failing to see to the provision of a psychosexual evaluation as part of the PIS report, thus depriving petitioner of an appeal thereon of which he otherwise would have taken." He asserts that "[t]his is a claim concerning counsel's failure to consult with petitioner about an appeal where there was reason to think that petitioner would want to appeal this matter of a breached plea due to its non-frivolous nature, as addressed in Roe v. Flores-Ortega, 528 U.S. 470, 120 S.Ct. 1029, 1036 (2000)." #14, at 3.

In Ground 4, petitioner alleges that he was denied his right to an appeal with effective assistance of counsel in violation of the Sixth and Fourteenth Amendments when counsel "failed to consult with him about an appeal as to the claim that the sentencing court had rendered his sentencing proceedings fundamentally unfair via precluding him and his counsel from being able to present any mitigating arguments, testimonies or evidence on petitioner's behalf due to the court's allowance of persons placing risk to petitioner's life and safety to remain in the courtroom during sentencing." He asserts that "[t]his is a claim concerning counsel's failure to consult with petitioner about an appeal where there

---

[4] Respondents assert in the answer that Lanoue's claim of a risk to his safety is "specious," that he never proved that his life and/or safety was at risk, that he made no showing that court personnel could not have protected him, and that his safety concerns were "utter nonsense" and "hysterical speculation." #37, at 32-33. If these concerns were "utter nonsense" and "hysterical speculation," such speculation has been repeated time and time again by prison authorities in this Court. The Nevada Department of Corrections repeatedly has maintained in this Court -- in efforts to support prison policies -- that sex offenders are at risk from the general prison population. *See,e.g., Koerschner v. Warden*, 508 F.Supp. 849, 850-51 (D.Nev. 2007). In rejecting Ground 3, this Court places no reliance upon respondents' assertions seeking to belittle Lanoue's concern for his safety should other prisoners learn of the nature of his offenses.

was reason to think that petitioner would want to appeal this matter due to its non-frivolous nature, as addressed in Roe, supra." #14, at 5.

Petitioner did not file a direct appeal following the conviction.

In state Ground 1 in his state post-conviction petition, Lanoue alleged that he was denied his right to a direct appeal because his counsel failed or refused to file a notice of appeal "when asked specifically to do so by the petitioner." #24, Ex. 26, at 6A.

In Ground 3 in his state post-conviction petition, Lanoue alleged : "Petitioner was denied his right to an appeal with effective assistance of counsel in violation of the Sixth & Fourteenth Amendments to the U.S. Constitution, wherein his counsel failed to consult with him about an appeal as to the claim that the State had breached the terms of the plea agreement by failing to see to the provision of a psychosexual evaluation as part of the PSI report, thus depriving petitioner of an appeal thereon of which he otherwise would have taken."  #24, Ex. 26, at 6B.

In  Ground 5 in his state petition, Lanoue alleged: "Petitioner was denied his right to an appeal with effective assistance of counsel in violation of the Sixth & Fourteenth Amendments to the U.S. Constitution, wherein his counsel failed to consult with him about an appeal as to the claim that the sentencing court had rendered his sentencing proceedings fundamentally unfair via precluding him and his counsel from being able to present any mitigating arguments, testimonies or evidence on petitioner's behalf due to the court's allowance of persons placing risk to petitioner's life and safety to remain in the courtroom during sentencing." #24, Ex. 26, at 6E.

Petitioner specifically noted in the state petition that state Grounds 3 and 5 each "specifically challenges counsel's failure to consult, per her constitutional duty to do so, with petitioner about an appeal where there was reason to think that petitioner would want to appeal various enumerated grounds for appeal due to their non-frivolous nature, as addressed in Roe, 120 S.Ct. at 1035-36." #24, Ex. 26, at 6B.

The state district court held an evidentiary hearing.  The court informed petitioner at the outset of the hearing that "the only issue that I'm going to have an evidentiary hearing on is whether you instructed your attorney to file an appeal" and that "I don't think any of the other issues merit a hearing." #24, Ex. 47, at 10.

Defense counsel Stacey Roundtree testified that she did not recall Lanoue requesting her to file an appeal. She maintained that her office policy was to file an appeal when requested by the client regardless of whether the issues were frivolous or nonfrivolous. She stated her opinion that there would not have been any nonfrivolous issues because Lanoue received the sentence provided for in the plea agreement. She stated that he would have had an issue for appeal only if the court had imposed a more severe sentence and had not allowed him to withdraw his plea pursuant to the plea agreement. She testified that she so discussed this with petitioner – prior to the sentencing. #24, Ex. 47, at 4-10.

The state district court, *inter alia,* made written findings that "Ms. Roundtree did not recall that Defendant ever asked her to perfect an appeal on his behalf." #24, Ex. 49, at 3.

On the state post-conviction appeal, the Supreme Court of Nevada held as follows:

> . . . [A]ppellant claimed that his counsel was ineffective for failing to file an appeal after being asked to do so. The district court held an evidentiary hearing on this issue. At the evidentiary hearing, appellant's counsel testified that appellant did not ask her to file an appeal on his behalf. Although appellant did not testify at the hearing, he argued that he asked his counsel to file an appeal several times. The district court determined that appellant's counsel was a credible witness and denied the petition. We conclude that the district court's factual determination was supported by substantial evidence and was not clearly wrong. Accordingly, the district court did not err in denying this claim.

#24, Ex. 60, at 3 (citation footnote omitted).

In this Court, respondents moved to dismiss on the basis that federal Grounds 2 and 4 were not exhausted.

Respondents argued as follows as to Ground 2:

> In his state petition filed March 18, 2005, Lanoue argued that his counsel was ineffective for failing to file an appeal after sentencing when Lanoue specifically asked him to do so. Exhibit 26 at 6A-6B. However, in Ground Two of the instant federal habeas petition, Lanoue now bases his claim on an assertion that his counsel failed to consult with him when there was reason to think that he would have wanted to appeal. Docket #1-2, at 3. Lanoue is arguing a different factual basis for his claim of ineffective assistance of counsel. Therefore, Ground Two is unexhausted and must be dismissed.

#24, at 15-16. Respondents presented an essentially verbatim parallel argument as to Ground 4, urging that petitioner was presenting for the first time in federal court a claim that counsel was ineffective for failing to consult with him. *Id.*, at 16.

-11-

As outlined above, federal Grounds 2 and 4 repeat the corresponding claims in state Grounds 3 and 5 nearly verbatim. The Court therefore denied the motion to dismiss, noting that "it does not appear that the state district court and the Supreme Court of Nevada addressed state Grounds 3 and 5." The Court directed respondents to "address Grounds 2 and 4 under a *de novo* standard of review unless the respondents can identify a state court holding on the ineffective assistance claims presented therein." #29, at 2-3.

In the answer, respondents devote approximately ten pages of argument seeking to establish that the Court erred in holding that federal Grounds 2 and 4 were exhausted and that a *de novo* standard of review should apply to the claims.[5] Respondents' contend, once again, that petitioner claimed in the state courts only that counsel failed to file an appeal despite being specifically requested to do so. Respondents further maintain that petitioner claimed for the first time in federal court that counsel failed to consult with him about an appeal despite his having nonfrivolous arguments for appeal. Respondents' argument is directly belied by the state court record. *In state Ground 1*, petitioner claimed that counsel failed to file a notice of appeal despite being specifically requested to do so. *In state Grounds 3 and 5 (as well as state Grounds 9 and 11)*, petitioner claimed that counsel failed to consult with him about an appeal despite his having nonfrivolous arguments for appeal. See #24, Ex. 26, at 6A-6G. Respondents' argument that the corresponding claims in federal Grounds 2 and 4 are not exhausted focuses exclusively on state Ground 1 and wholly ignores petitioner's presentation of claims in state Grounds 3 and 5 that are identical to the claims asserted in federal Grounds 2 and 4. Petitioner quite clearly and repeatedly alleged in state Grounds 3 and 5 that counsel failed to consult with him regarding an appeal, and he specifically relied upon the relevant portions of the Supreme Court's *Roe v. Flores-Ortega* decision as the basis for the claims.

Respondents urge that "the state courts are not required to be as pigs searching for truffles." #37, at 25. The "truffles" in this instance, however, were not buried but instead were in plain view. Merely because the state courts failed to consider claims that petitioner actually presented does not mean that

---

[5] The answer is not an appropriate vehicle for rehashing respondents' arguments as to prior rulings by the Court. Counsel in future should direct such argument to a motion for reconsideration.

-12-

he failed to present the claims.[6] And if the state courts failed to consider claims that the petitioner presented, then the claims – subject to any relevant state court factual findings – are not subject to deferential AEDPA review but rather are subject to *de novo* review. *See,e.g., Scott v. Schriro*, 567 F.3d 573, 584-85 (9th Cir. 2009)(quoting prior circuit authority for the proposition that "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it *de novo*"). Respondents' renewed exhaustion argument continues to be directly belied by the state court record and completely without merit.[7]

The Court accordingly reviews the claims *de novo* subject to any relevant factual findings made by the state courts.

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court held as follows with regard to counsel's duty to consult with a defendant regarding a possible appeal:

> We . . . reject a bright-line rule that counsel must always consult with the defendant regarding an appeal.
>
> We instead hold that counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing. In making this determination, courts must take into account all the information counsel knew or should have known. *See* [citation to earlier Supreme Court authority focusing on the totality of the circumstances]. Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings. Even in cases when the defendant pleads guilty, the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and

---

[6] The state district court clearly advised petitioner at the beginning of the evidentiary hearing that it was hearing testimony only as to the claim that counsel failed to file an appeal despite having been asked to do so. #24, Ex. 47, at 3.

[7] Respondents point to the fact that petitioner did not file an opposition to their earlier motion to dismiss. As the Court noted in the prior order, however, it was subject to substantial question as to whether petitioner had received proper notice of the order extending his opposition time. #29, at 1 n.1. Moreover, even when no opposition is filed to a motion, the Court will not grant a motion that is based upon an argument that is clearly belied by the record on initial review. Respondents and the state courts simply read state Grounds 3 and 5 out of Lanoue's state court petition. This Court cannot do so even with no opposition to the earlier motion.

> whether the plea expressly reserved or waived some or all appeal rights. Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.
>
> . . . . We expect that courts evaluating the reasonableness of counsel's performance using the inquiry we have described will find, in the vast majority of cases, that counsel had a duty to consult with the defendant about an appeal. We differ from Justice Souter only in that we refuse to make this determination as a *per se* (or "almost" *per se*) matter.

528 U.S. at 480-81, 120 S.Ct. at 1036-37.

As noted, entry of a guilty plea constitutes "a highly relevant" but yet "not determinative" factor under the analysis in *Roe v. Flores-Ortega*. 528 U.S. at 480, 120 S.Ct. at 1036. Other passages in the opinion confirm that, even in cases where the defendant enters a guilty plea, the question of whether the defendant had nonfrivolous grounds for appeal remains, at the very least, if not more, an also "highly relevant" factor in determining whether counsel had a duty to consult.[8]

The Supreme Court further held with regard to the prejudice inquiry that – because the deficient performance goes to the forfeiture of the appellate proceeding itself – the petitioner is not required to establish a reasonable probability that he had claims that would have prevailed on direct appeal. Rather, a petitioner only "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." 528 U.S. at 484, 120 S.Ct. at 1038. The Court accordingly, consistent with prior precedent, was "presuming prejudice with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." 528 U.S. at 484, 120 S.Ct. at 1038-39. In this regard, "evidence that there were nonfrivolous grounds for appeal . . . will often be highly relevant in making this determination" of whether a rational defendant would have wanted to appeal. 528 U.S. at 485, 120 U.S. at 1039.

---

[8] *See* 528 U.S. at 479, 120 S.Ct. at 1036 (suggesting that there would be no duty to consult where the defendant entered a plea, received the expected sentence, was informed by the state court of his appeal rights, and "counsel concludes that there are no nonfrivolous grounds for appeal"); 528 U.S. at 485-86, 120 S.Ct. at 1039 ("evidence that there were nonfrivolous grounds for appeal . . . will often be highly relevant in making this determination [as to prejudice] . . . [and] both [deficient performance and prejudice] may be satisfied if the defendant shows nonfrivolous grounds for appeal").

On *de novo* review, the Court concludes that petitioner has established under the foregoing standards that he was deprived of his right to a direct appeal due to ineffective assistance of counsel. Considering all relevant factors, a rational defendant would have wanted to appeal in the circumstances presented. A challenge based upon the State's failure to perform a psychosexual evaluation as provided for in the plea agreement clearly was a nonfrivolous ground for appeal. On federal habeas review in this case, the Court has concluded that the state supreme court's rejection of a derivative claim of ineffective assistance of counsel for not objecting at sentencing was neither contrary to nor an unreasonable application of clearly established federal law, under the deferential AEDPA standard of review. However, this holding on federal habeas review does not lead to the conclusion that the underlying substantive claim would have been frivolous if presented on direct appeal for a *de novo* review. Indeed, this Court has granted relief on the underlying substantive claim on *de novo* review in a case that is not entirely dissimilar from the present one. *See Ever Joselin Arevalo v. Craig Farwell*, No. 3:04-cv-00568-ECR-VPC, #36 (March 25, 2008); *see also Van Buskirk v. State*, 102 Nev. 241, 720 P.2d 1215 (1986)(sentence vacated where defendant's plea had been induced in part by promise that defendant would be evaluated and treated for alcoholism prior to sentencing). Petitioner would have had a not insubstantial argument that the provision in the written plea agreement regarding a psychosexual evaluation was at least part of the inducement when viewing the plea agreement as a whole. He further would have had a not insubstantial argument that he was denied the opportunity for the exercise of the sentencing court's discretion upon a full record to unilaterally sentence him to a lesser sentence.

Defense counsel focused – prior to the sentencing – only upon the provision of the plea agreement under which Lanoue could move to withdraw his plea if the court sentenced him to a more severe sentence than that recommended by the parties under the plea agreement. Counsel's focus prior to the sentencing on that one facet of the plea agreement as the only possible basis for an appeal ignored other potential appellate issues that were presented on the record following the sentencing. Counsel's failure to consult with Lanoue after the sentencing and entry of judgment despite the presence of at least one nonfrivolous appellate issue deprived him of assistance of counsel at a critical stage of the criminal proceeding.

1    To be sure, Lanoue received the sentence recommended under the plea agreement or, as
2 respondents characterize it, "no more and no less." #37, at 28.  In the "no less," however, potentially
3 lies the rub.  Petitioner, again, had a not insubstantial argument that he was denied the opportunity for
4 the exercise of the sentencing court's discretion upon a full record to unilaterally go below the
5 recommended sentence.  While the state district court stated at the sentencing that the court was not
6 inclined to impose a lesser sentence, that was upon the record presented.  A rational defendant in
7 Lanoue's situation would have had the potential upside from an appeal of possibly obtaining a second
8 sentencing determination with consideration of possible imposition of a lesser sentence.  There was
9 virtually no downside to an appeal as petitioner had an unqualified right under the plea agreement to
10 withdraw his plea if he received a more severe sentence than the recommended sentence.  A properly-
11 advised rational defendant in that circumstance would have pursued the appeal.

12    Respondents' arguments seeking to establish to the contrary are not persuasive.

13    Respondents urge that the State did not breach the plea agreement because the provision in the
14 plea agreement stating that "the Division of Parole and Probation" shall arrange for a psychosexual
15 evaluation "imposed no obligation on the prosecutor." #37, at 29.  Respondents rely upon a distinction
16 without a difference.  Under the controlling case law, "the State" is not merely the prosecutor.  In *Van*
17 *Buskirk*, for example, the Supreme Court of Nevada granted relief to the defendant because "the district
18 court violated the plea bargain by sentencing him before he was evaluated and treated for alcoholism."
19 102 Nev. at 243, 720 P.2d at 1216.  Respondents' narrow parsing of responsibility under the plea
20 agreement therefore would not appear to be in accord with the controlling law that would have been
21 applied on an appeal.[9]

22    Respondents next urge that "the gravamen of Lanoue's claim has to do with whether his [plea]
23 was voluntary," and "a challenge to the validity of a guilty plea are [sic] not appropriate for review on
24 direct appeal." #37, at 29-30.  Lanoue challenged not the voluntariness of his plea, however, but instead

---

[9]The Court implies no holding as to the merits of the underlying substantive claim.  The Court notes only that the argument advanced by respondents for denying Ground 2 does not demonstrate that the underlying substantive claim would have been frivolous on a direct appeal.  In this regard, it is respondents' argument that appears to be without merit.

-16-

the specific performance of the plea agreement in connection with the sentencing. Under long-established precedent, the Supreme Court of Nevada considers such a claim for breach of a plea agreement on direct appeal from a judgment of conviction. *See, e.g., Echeverria v. State*, 119 Nev. 41, 62 P.3d 743 (2003); *Sullivan v. State*, 115 Nev. 383, 990 P.2d 1258 (1999); *Van Buskirk v. State*, 102 Nev. 241, 720 P.2d 1215 (1986). Respondents' position here too would not appear to be in accord with the controlling law that would have been applied on an appeal.

The Court accordingly holds, on *de novo* review as to Ground 2, that petitioner was deprived of a direct appeal through ineffective assistance of counsel due to counsel's failure to consult with him with regard to a possible appeal after sentencing and entry of judgment.

Petitioner thus has established a right to conditional habeas relief under federal Ground 2, as further specified at the end of this order.

The Court therefore has no occasion to further consider federal Ground 4 as a basis for federal habeas relief. Grant of relief on Ground 4 would result in the same decree as the decree that will result from the grant of relief on Ground 2. In entering a final judgment, the Court therefore will deny Ground 4 without prejudice as moot.

Accordingly, the foregoing considered,

IT IS ORDERED that the petition for a writ of habeas corpus is GRANTED IN PART and DENIED IN PART, consistent with the remaining provisions herein, with Grounds 1 and 3 being denied on the merits, a conditional writ of habeas corpus being granted on Ground 2, and Ground 4 being denied without prejudice as moot.

IT FURTHER IS ORDERED, taking into account the procedures authorized in the state courts by Rule 4(c) of the Nevada Rules of Appellate Procedure, that a conditional writ of habeas corpus is GRANTED on Ground 2, such that an unconditional writ of habeas corpus will be entered vacating the judgment of conviction filed originally on June 28, 2004 and amended on March 14, 2005, in *State of Nevada v. John Allen Lanoue*, Case No. C200321, in the Eighth Judicial District Court for Clark County, Nevada, *<u>unless</u>*, **upon a timely filing by petitioner, within thirty (30) days of entry of judgment in federal court, of a copy of this Court's order and judgment in the state court record in the district court in which petitioner's criminal case was pending**, the State provides petitioner,

1  along with appointment of new counsel, either an untimely appeal or an equivalent remedial procedure,
2  so long as the procedure provided permits petitioner, with the assistance of new appointed counsel other
3  than defense counsel in the proceedings leading to the conviction, to pursue all direct appeal claims that
4  would have been available on a timely direct appeal, without regard to whether previously asserted in
5  a state or federal habeas or post-conviction petition.

6  **IT FURTHER IS ORDERED** that, giving due regard to the related provisions in Rule
7  **4(c)(1)(C) of the Nevada Rules of Appellate Procedure, petitioner shall be entitled to no relief**
8  **under this Court's order and judgment unless petitioner timely and properly files a copy of this**
9  **Court's order and judgment with the state district court within thirty (30) days of entry of the**
10 **federal court judgment. That is, the conditional grant of the writ under this Court's order and**
11 **judgment will lapse, with no obligation on the part of the State or respondents, if petitioner fails**
12 **to timely and properly file a copy of this Court's order and judgment with the state district court**
13 **clerk within thirty (30) days of entry of the final judgment now being entered by the Court.**

14 IT FURTHER IS ORDERED, again taking into account Rule 4(c)(1)(C) of the Nevada Rules
15 of Appellate Procedure, that, if any party appeals this Court's order and judgment to the Ninth Circuit
16 Court of Appeals, this Court's order and judgment shall not preclude respondents from seeking and
17 obtaining a stay in the state courts of any direct appeal or other procedure initiated in the state courts
18 under the preceding two paragraphs, up through the completion of all proceedings on federal review and
19 the expiration of the time periods for seeking further appellate review in the Court of Appeals and
20 *certiorari* review in the United States Supreme Court.

21 IT FURTHER IS ORDERED that any failure of the state courts to lift a stay as described in the
22 preceding paragraph shall not be grounds for issuance of an unconditional writ herein unless the state
23 courts have failed to lift the stay in response to a motion to lift the stay that is filed by the petitioner in
24 the state courts after the completion of all proceedings on federal review and the expiration of the time
25 periods for seeking further appellate review in the Court of Appeals and *certiorari* review in the United
26 States Supreme Court.

27 IT FURTHER IS ORDERED that it is the Court's express intention that the judgment entered
28 shall constitute a final judgment, which will commence the time period for appeal for all parties, *i.e.*,

both for petitioner and respondents, as to the disposition herein of all claims presented. Any subsequent request for entry of an unconditional grant of the writ based upon the conditions of the conditional writ not being timely satisfied will arise as a matter of enforcement of the final judgment now being entered by the Court.

IT FURTHER IS ORDERED that a certificate of appealability is GRANTED as to the Court's denial of Grounds 1, 3 and 4 and that the Clerk of Court shall clearly indicate in an appropriate docket entry that a certificate of appealability has been granted.

**If petitioner intends to appeal this Court's denial of further relief on Grounds 1, 3 and 4 and/or to appeal any aspect of the Court's order and judgment as to Ground 2, petitioner must file a timely notice of appeal with the federal district court clerk even though the district court has issued a certificate of appealability and regardless of the conditional grant of relief on Ground 2. The thirty (30) day time period for filing an appeal in this federal habeas case, as distinguished from any direct appeal provided in the state courts, runs from the entry of the federal judgment now being entered pursuant to this order, subject to Rule 4(c) of the Federal Rules of Appellate Procedure.**

The Clerk of this Court shall enter final judgment accordingly, repeating verbatim therein the first six disposition paragraphs on pages 17-19 of this order.

DATED this 25th day of March, 2010.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE